IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEREMY M. WINE,

                                                      OPINION AND ORDER

               Plaintiff,                               08-cv-72-bbc

    v.

MICHAEL THURMER, MICHAEL MIESNER,
DONALD STRAHOTA, CAPTAIN BRUCE MURASKI,
CAPTAIN MELI, KATHRYN R. ANDERSON,
LT. DANIEL BRAEMER, LT. GREFF, CAPTAIN
GEMPLER, C.O. BEAHM, C.O. TANNER, C.O. PONTOW,
C.O. MEDEMA, C.O. ROSS, SGT. LIND, C.O. GLAMMAN,
C.O. BOVEE, SGT. KELLY BEASLEY, SGT. NAVIS,
NURSE FRANCIS MONROE JENNINGS, NURSE
CHARLENE REITZ, BELINDA SCHRUBBE, C.O. STANIEC,
RICK RAEMISCH, JOHN BETT, DAN WESTFIELD,
WISCONSIN DEPARTMENT OF CORRECTIONS,
WISCONSIN DIVISION OF ADULT INSTITUTIONS, and
JOHN AND JANE DOE EMPLOYEES OF WCI,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

After twice having his complaints in this case dismissed on the ground that they violated Fed. R. Civ. P. 8, plaintiff Jeremy M. Wine has filed a second proposed amended complaint describing more clearly and concisely what his claims are and what the defendants allegedly did to violate his constitutional rights. Although plaintiff has paid the fee for filing

1

his complaint, because he is a prisoner his complaint must be screened pursuant to 28 U.S.C. § 1915A and dismissed if his claims are frivolous, malicious, not claims upon which relief may be granted or if plaintiff seeks monetary relief from a defendant who is immune from such relief. Jurisdiction is present. 28 U.S.C. § 1331.

In his complaint plaintiff alleges the following facts.

ALLEGATIONS OF FACT

Plaintiff Jeremy Wine is a prisoner at the Racine Correctional Institution in Sturtevant, Wisconsin. At all times relevant to this case, he was confined at the Wisconsin Correctional Institution in Waupun, Wisconsin.

Defendants Rick Raemisch, John Bett, Dan Westfield and Kathryn Anderson are employed by the Wisconsin Department of Corrections' Division of Adult Institutions. Defendant Raemisch is Secretary, defendant Bett is an administrator, defendant Westfield is the security chief and defendant Anderson is chief legal counsel. Defendants Wisconsin Department of Corrections and Wisconsin Division of Adult Institutions are state agencies. The remaining defendants are employed at the Wisconsin Correctional Institution in Waupun. Defendant Thurmer is the warden; defendant Miesner is deputy warden; defendant Strahota is the security director; defendant Muraski is an investigator; defendant Meli is an administrative captain; defendant Braemer is a lieutenant in the Health Services

2

Complex; defendants Greff and Gempler are shift supervisors; defendants Staniec, Beahm, Tanner, Pontow, Medema, Ross, Lind, Glamman, Bovee, Beasley and Navis are officers or sergeants; defendants Jennings and Reitz are nurses, defendant Schrubbe is the nurse manager; and defendants John and Jane Doe are unidentified employees at the institution.

On September 29, 2007, defendant Beasley "maliciously and sadistically" hit plaintiff in the testicles two times during a pat search and then refused to call a nurse to assess plaintiff's injuries. When another officer did call a nurse, the nurse came and verified plaintiff's injuries. Plaintiff wrote to defendant Schrubbe to complain about lack of medical care relating to this incident. Schrubbe did not respond. Also on September 29, 2007, defendant Beasley destroyed legal materials in plaintiffs cell that plaintiff needed for an active appeal and planted pens in the cell in retaliation for plaintiff's threat to report her for hitting him in the testicles. Plaintiff was punished for possessing the pens.

Plaintiff wrote to defendants Thurmer, Meisner, Strahota, Meli, Muraski, Raemisch, Bett, Westfield and Anderson to report defendant Beasley's actions and to ask for protection from her and her friends. On October 1, 2007, plaintiff was moved to the north program cell hall to separate him from defendant Beasley and her co-workers.

When he arrived at the north program cell hall, defendant Tanner told plaintiff that "inmates who snitch on staff don't get shit over here." Plaintiff wrote to defendants Thurmer, Strahota and Muraski to report Tanner's "threats." On October 3, 2007,

3

defendant Tanner sexually harassed plaintiff, making sexually inappropriate comments and gestures during a strip search. In addition, Tanner physically assaulted plaintiff by pushing his fist in plaintiff's back and squeezing plaintiff's arm while escorting plaintiff back to his cell. Defendant Reitz saw plaintiff and refused to treat his injuries. Plaintiff promptly wrote to defendants Thurmer, Miesner, Strahota, Meli, Muraski, Raemisch, Bett, Westfield and Anderson to report the actions of defendant Tanner. He also filed a grievance.

On October 4, 2007, defendants Braemer and Gempler demoted plaintiff to Step-1 and moved plaintiff back to the unit in which defendant Beasley was assigned. Plaintiff was not given a hearing before the demotion and unit transfer. Also on October 4, 2007, defendants Gempler, Braemer, Ross, Pontow, Medema and Glamman called plaintiff a snitch and whistleblower over and over again. That same day, plaintiff wrote to defendants Thurmer, Raemisch, Strahota, Anderson, Bett and Westfield to report these incidents. The only person to respond was defendant Thurmer, who said that he had ordered their actions and approved of them.

On October 7, 2007, defendants Gempler, Meli and Strahota wrote or approved conduct report #1913558 against plaintiff charging him with lying about staff when he reported defendants Tanner's assaults and sexual harassment. Plaintiff was found guilty of the charge and given 368 days in segregation and 120 days' loss of good time as punishment.

On October 25, 2007, defendant Beasley and "her friends" slid three envelopes under

4

plaintiff's cell door with knives and other sharp objects in them with notes telling plaintiff to kill himself.

On November 8, 2007, defendant Muraski wrote plaintiff conduct report #1913659, which was approved by defendants Meli and Strahota, saying that plaintiff's reports of defendant Beasley's assaults and harassment were lies. Plaintiff was found guilty and punished with 360 days in segregation.

On November 13, 2007, defendant Pontow came to plaintiff's cell and harassed plaintiff saying, "You're real tough behind that steel door, Wine, you fat homosexual." Plaintiff promptly reported Pontow's comment to defendants Beasley and Medema. Not long thereafter, while defendant Medema was walking plaintiff to recreation in full restraints, handcuffs, shackles and a waist chain, Pontow came up behind plaintiff and pushed him in the back with his hand saying, "What's up now, tough guy." Pontow then grabbed plaintiff's arm and he and defendant Medema slammed plaintiff's body and face into a wall before dragging him into a cell where defendants Pontow, Beasley, Medema, Ross, Glamman and Bovee beat him up. After the beating, defendant Frances Monroe Jennings verified plaintiff's injuries (pain, bleeding, swelling and bruising), but refused to treat him or send him to a hospital. Plaintiff wrote to defendant Schrubbe to complain about the lack of medical care. Schrubbe did not respond. That same day, defendant Medema wrote conduct report #1913614, claiming that plaintiff had resisted staff and was disruptive, and defendants Meli

5

and Strahota approved it. Later, the conduct report was dismissed.

Between 6:55 p.m. and 7:30 p.m. on November 13, 2007, defendants Beasley, Navis, Lind, Pontow, Medema, Beahm, Staniec and Bovee refused to give plaintiff food or clothing. While plaintiff lay naked on his cold cell floor, defendants Beasley, Pontow, Medema, Bovee, Glamman and Ross threw cups full of urine on him. The next day, defendants Navis, Lind, Pontow, Medema, Bovee and Glamman refused to allow plaintiff to take a shower to clean off the urine.

On November 15, 2007, defendants Miesner, Thurmer and Strahota transferred plaintiff to Green Bay Correctional Institution without first giving him a hearing.

Between September 29, 2007 and November 15, 2007, plaintiff wrote to defendants Thurmer, Miesner, Strahota, Raemisch, Bett, Westfield and Anderson, saying he wanted to commit suicide because of the harassment and assaults by staff. These defendants did not respond to plaintiff and instead sent clinical staff to see him and tell him they wanted plaintiff to kill himself and stop writing them. During this same period, defendants Beasley, Pontow, Ross, Bovee, Medema, Glamman, Navis, Lind, Beahm, Staniec, Braemer, Greff and Gempler repeatedly called plaintiff a snitch, rat and whistleblower. They kicked on plaintiff's cell door while he slept and encouraged other inmates to do the same in retaliation for plaintiff's filing complaints and reporting staff misconduct. Plaintiff lost sleep and became depressed.

6

OPINION

A.  John and Jane Doe Defendants

As an initial matter, I note that plaintiff has not identified in his complaint what claims he is raising against the John and Jane Doe defendants.  Ordinarily, if a party wants to sue someone whose name is unknown to him, he must explain in the body of his complaint what the Doe defendant did, and where and when he did it.  In other words, unnamed defendants are to be treated no differently from named defendants, except that they are referred to as Does until the plaintiff can learn the true name of the perpetrator of the allegedly unconstitutional acts.  In this way, the court can determine whether the plaintiff states a claim of constitutional wrongdoing against the Doe defendant and the Doe defendant has notice of the claim against him.

Plaintiff has failed to explain what if anything any John or Jane Doe defendant did to violate his constitutional rights.  Therefore, I will dismiss the John and Jane Doe defendants from this action.

B.  Defendants Wisconsin Department of Corrections
and Wisconsin Division of Adult Institutions

Plaintiff has named as defendants the Department of Corrections and the Wisconsin

7

Division of Adult Institutions. Under Rule 17(b) of the Federal Rules of Civil Procedure, the capacity to sue or be sued is determined by the law of a party's domicile. In Wisconsin, a governmental unit is considered to be an independent body politic and thus suable only if it possesses independent proprietary functions and powers such as the power to levy taxes, to incur liability beyond an amount appropriated by the legislature, to hold title to property in its own name, or to dispose of real and personal property without express authority from the state. Majerus v. Milwaukee County, 39 Wis. 2d 311, 314-15, 159 N.W.2d 86 (1968); Sullivan v. Board of Regents of Normal Schools, 209 Wis. 242, 244, 244 N.W.2d 563 (1932). Plaintiff does not suggest that the Department of Corrections or Division of Adult Institutions has such independent powers and is capable of being sued. Therefore, these defendants will be dismissed from this case.

### C. Fed. R. Civ. P. 20

There is a more serious problem with plaintiff's complaint than the flaws noted above. Plaintiff's pleading contains allegations that concern unrelated matters and different sets of defendants that, under Fed. R. Civ. P. 20, cannot be litigated in the same lawsuit.

In George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007), the court of appeals ruled that a prisoner may not "dodge" the fee payment or three strikes provisions in the Prison Litigation Reform Act by filing unrelated claims against different defendants in one lawsuit.

Rather, district courts must sever unrelated claims against different defendants or sets of defendants and require that the claims be brought in separate lawsuits. The court reminded district courts that Fed. R. Civ. P. 20 applies as much to prisoner cases as it does to any other case.

Fed. R. Civ. P. 20(a) governs the number of parties a plaintiff may join in any one action. It provides that a plaintiff may sue more than one defendant when his injuries arise out of "the same transaction, occurrence, or series of transactions or occurrences" and when there is "any question of law or fact common to all defendants." Thus, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence or series of transactions or occurrences and presents questions of law or fact common to all. Id.; 3A Moore's Federal Practice ¶ 20.06, at 2036-2045 (2d ed. 1978). Until the requirements for joinder of parties have been satisfied under Rule 20, Fed. R. Civ. P. 18 may not be used to allow the plaintiff to join as many other claims as the plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions. Intercon Research Assn., Ltd. v. Dresser Ind., Inc., 696 F.2d 53, 57 (7th Cir. 1983) (quoting 7 Charles Alan Wright et al., Federal Practice & Procedure).

Before I apply Rule 20 to plaintiff's complaint, I will address three preliminary issues

that require attention.

1. Threats

First, plaintiff's allegations that he was verbally harassed or threatened with harm do not state a claim of a violation of his right to be free from cruel and unusual punishment or of his rights to due process or equal protection under the laws of the United States.  DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2002).  Although taunts, threats and name-calling are unprofessional and deplorable, the Constitution supplies no right to be free from verbal assaults perpetrated by institution officials.  Id.  See also Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (prison official's use of vulgar language does not violate inmate's civil rights); Martin v. Sargent, 780 F.2d 1334 (8th Cir. 1985) (inmate's rights not violated by threat that he would have "bad time" if he refused to cut his hair and shave his beard). Therefore, I cannot allow plaintiff to proceed on his claims that defendant Tanner threatened him with "not getting shit" in the north cell hall; defendants Beasley, Pontow, Ross, Bovee, Medema, Glamman, Navis, Lind, Beahm, Staniec, Braemer, Greff and Gempler called him a snitch, rat and whistleblower at defendant Thurmer's direction; defendant Pontow called plaintiff a fat homosexual; and defendants Raemisch, Strahota, Anderson, Bett, Westfield, Beasley and Medema failed to respond to plaintiff's complaints about the threats and taunts.

2. <u>Failure to act after plaintiff was assaulted</u>.

Second, plaintiff says he was assaulted physically on three separate occasions. First, defendant Beasley hit him in the testicles on September 29, 2007. Next, on October 3, 2007, defendant Tanner made sexual gestures while performing a strip search of plaintiff and later pushed his fist into plaintiff's back and squeezed plaintiff's arm while he was escorting plaintiff to his cell. Finally, on November 13, 2007, defendants Pontow, and Medema slammed plaintiff's body and face into a wall and dragged him into a cell where defendants Pontow, Beasley, Medema, Ross, Glamman and Bovee beat him up and threw urine on him. Following each of the first two incidents, plaintiff allegedly wrote to defendants Thurmer, Miesner, Strahota, Meli, Muraski, Raemisch, Bett, Westfield and Anderson to report the matters and ask that action be taken against Beasley and Tanner. Plaintiff was moved to the north cell hall following the first incident. No one responded to plaintiff's complaints about the second incident.

Because it appears that action to move plaintiff away from defendant Beasley was taken in response to plaintiff's complaints about the first incident, plaintiff cannot proceed on a claim in this lawsuit that defendants Thurmer, Miesner, Strahota, Meli, Muraski, Raemisch, Bett, Westfield and Anderson are liable to him for their failure to act. Even if they had taken no action, as plaintiff alleges was the situation following the second incident, plaintiff cannot sue these defendants for their failure to answer his complaints. The failure

11

of prison officials to respond to a complaint of wrongdoing after an act has been completed is not sufficient to involve those officials personally in the alleged unconstitutional act. George, 507 F.3d at 609-10.  Therefore, I will not allow plaintiff to proceed on his claim that defendants Thurmer, Miesner, Strahota, Meli, Muraski, Raemisch, Bett, Westfield and Anderson failed to respond to his complaints about defendants Beasley and Tanner.

3. Issuance of conduct reports

Plaintiff contends that after defendant Tanner assaulted him, defendant Gempler charged plaintiff with lying about staff on October 7, 2007, in conduct report #1913558 and that defendants Meli and Strahota approved the report.  Plaintiff contends that on November 8, 2007, defendant Muraski wrote conduct report #1913659 charging him with lying about staff in regard to his reports of Beasley's conduct and that defendants Meli and Strahota approved the report.  Finally, he contends that after he was assaulted on November 13, 2007, defendant Medema wrote him a conduct report numbered #1913614, charging him with resisting staff and being disruptive, and that defendants Meli and Strahota approved that report.  Plaintiff does not allege any additional facts concerning the issuance or approval of these conduct reports from which an inference may be drawn that his constitutional rights were infringed by these acts.  Because plaintiff has no independent constitutional right to be free from receiving a conduct report or having the conduct report

12

approved, I will not allow plaintiff to proceed on his claims that defendants Gempler, Muraski, Medema, Meli and Strahota violated his rights by writing or approving conduct reports issued on October 7, November 8 and November 13, 2007. (Because plaintiff does not allege any other facts against defendant Muraski that survive the preliminary screening of plaintiff's complaint, I will dismiss Muraski from this case.)

4. Conspiracy

Finally, in his complaint, plaintiff offers the following allegation at paragraph 36:

At all times during the assaults and harassments of me all defendants were engaged in a conspiracy and joint venture to cause me physical harm, mental anguish, emotional distress, and violate my civil rights because I filed grievances and reported staff misconduct.

I am unwilling to consider plaintiff's bald assertion of a conspiracy sufficient to transform his lengthy list of wrongdoings into a "series of transactions" sufficient to satisfy Rule 20. To state a claim for conspiracy under § 1983, a plaintiff must identify the parties to the conspiracy, the approximate date of the conspiracy and its purpose. Walker v. Thompson, 288 F.3d at 1007 (7th Cir. 2002). The crux of a civil conspiracy claim is the existence of an agreement among state officials to inflict a particular injury. Hernandez v. Joliet Police Dept., 197 F.3d 256, 263 (7th Cir. 1999).

Plaintiff's assertion of a conspiracy has a paranoid quality about it that raises serious

concerns about the validity of the claim. In any event, there are no facts alleged in plaintiff's complaint from which an inference may be drawn that 26 separate employees of the Wisconsin Department of Corrections, including the secretary of the department and its chief legal counsel, the administrator and security chief of the Division of Adult Institutions, the warden of Waupun, numerous guards, complaint investigators, shift supervisors, hearing officers and nursing staff plotted together to violate plaintiff's constitutional rights. A suit stuffed with allegations that the plaintiff has been subjected to a variety of constitutional violations without some hint of a basis for plaintiff's belief that a genuine conspiracy exists will not suffice to satisfy the requirements of Rule 20.

5. Remaining claims

With the complaint preliminarily limited by the dismissal of the issues discussed above, I conclude that the pleading must be divided into four separate lawsuits.

In what I will call Lawsuit #1, plaintiff may raise his claim that on October 3, 2007, defendant Tanner sexually harassed him during a strip search and physically assaulted him while escorting him back to his cell. In this same lawsuit, plaintiff may include his claim that defendant Reitz came to see him following the assault and refused to treat plaintiff's injuries, and that defendant Schrubbe failed to respond to plaintiff's written complaint that he was being denied medical treatment.

14

In what I will call Lawsuit #2, plaintiff may sue defendants Beasley, Pontow, Ross, Bovee, Medema, Glamman, Navis, Lind, Beahm, Staniec, Braemer, Greff and Gempler for causing plaintiff sleep deprivation and depression by kicking on plaintiff's door while he slept and encouraging other inmates to do the same in retaliation for his complaints and reports of staff misconduct. In this same lawsuit, plaintiff is allowed under Fed. R. Civ. P. 18 to sue defendants Braemer and Gempler for demoting him to Step 1 on October 4, 2007, without first providing him a hearing. In addition, he is permitted to sue defendants Beasley, Pontow, Bovee, Medema, Navis, Lind, Beahm and Staniec for refusing to give him food or clothing on November 13, 2007. Finally, under Rule 18, plaintiff may include in this lawsuit his individual claims against defendant Beasley, that is, his claims that defendant Beasley a) used excessive force against him on September 29, 2007; b) destroyed legal materials that plaintiff needed for an appeal on September 29, 2007, and planted contraband (pens) in plaintiff's cell to retaliate against him for reporting her physical assault of him; and c) exposed him to an excessive risk of harm on October 25, 30 and 31, 2007, by putting knives and sharp objects under his cell door and telling him to kill himself.

In what I will call Lawsuit #3, plaintiff may sue defendants Medema, Pontow, Beasley, Ross, Glamman and Bovee for assaulting plaintiff on November 13, 2007 and then throwing urine on him. In this same lawsuit, plaintiff may include his claim that defendant Jennings failed to tend to his injuries following the assault and defendant Schrubbe failed

15

to insure that he receive medical attention after he complained about Jennings's inaction. Finally, plaintiff may sue in this lawsuit defendants Navis, Lind, Pontow, Medema, Bovee and Glamman for refusing to let plaintiff shower after he had been doused with urine.

Last, in what I will call Lawsuit #4, plaintiff may sue defendants Thurmer, Miesner, Strahota, Raemisch, Bett, Westfield and Anderson for responding to plaintiff's letters by sending clinical staff to tell plaintiff he should kill himself and stop writing. In this same lawsuit, plaintiff may add under Fed. R. Civ. P. 18 his claim that defendants Miesner, Thurmer and Strahota transferred him to Green Bay Correctional Institution without first giving him a hearing.

In light of George, I may apply the filing fee plaintiff paid in this case to only one of the four lawsuits I have identified above. Plaintiff will have to choose which lawsuit that is. That lawsuit will be the only lawsuit assigned to this case number.

As for the other lawsuits, plaintiff has a more difficult choice. He may choose to pursue each lawsuit separately. However, because he has struck out under § 1915(g) and because none of the complaints qualifies for the imminent danger exception to § 1915(g), plaintiff will have to pay the full filing fee before he may proceed further with any one of the additional lawsuits.[1] Alternatively, plaintiff may choose to dismiss any or all of his remaining

---

[1] Under George v. Smith, 507 F.3d at 607-608, a strike is counted for the purpose of barring prisoners from seeking pauper status under 28 U.S.C. § 1915(g) for any case in

16

lawsuits voluntarily. If he chooses this latter route, plaintiff will not owe additional filing fees. Any lawsuit dismissed voluntarily would be dismissed without prejudice, so plaintiff would be able to bring it at another time.

Plaintiff should be aware that because it is not clear at this time which of his separate lawsuits he will pursue, I have not undertaken a full screening of the merits of the claims raised in each of the separate lawsuits identified above. That means that even if plaintiff pays the full fee for any additional lawsuits, he has no guarantee that the suit will survive screening. Once plaintiff identifies the suits he wants to continue to litigate and pays any additional filing fees, I will screen the individual actions that remain as required under 28 U.S.C. § 1915A.

ORDER

---

which *any* claim is dismissed as legally meritless or for failure to state a claim upon which relief may be granted. The court's records reveal that on October 27, 1999, Judge Shabaz screened plaintiff's complaint in Wine v. Perlich, 99-cv-639-jcs, and dismissed the action for plaintiff's failure to state a claim upon which relief may be granted. In addition, in Wine v. Dept. of Corrections, 00-cv-704-bbc (decided Dec. 27, 2000), I dismissed certain claims as legally frivolous at the time I screened plaintiff's complaint. Finally, on May 3, 2001, Judge Shabaz granted a motion to dismiss a case in which Jeremy Wine was a co-plaintiff, Lemberger v. Litscher, 01-cv-157-jcs, for plaintiffs' failure to state a claim upon which relief may be granted. Therefore, plaintiff is no longer eligible to seek pauper status to pursue additional lawsuits unless the allegations of his complaint show that he qualifies for the exception to § 1915(g).

17

IT IS ORDERED that

1. The following claims are dismissed from this lawsuit as legally meritless:

    a. Defendant Tanner threatened plaintiff with "not getting shit" when plaintiff was transferred to the North cell hall;

    b. Defendants Beasley, Pontow, Ross, Bovee, Medema, Glamman, Navis, Lind, Beahm, Staniec, Braemer, Greff and Gempler called him a snitch, rat and whistleblower and defendant Thurmer directed them to do it;

    c. Defendant Pontow called plaintiff a fat homosexual;

    d. Defendants Raemisch, Strahota, Anderson, Bett, Westfield, Beasley and Medema failed to respond to plaintiff's complaints about threats and taunts;

    e. Defendants Thurmer, Miesner, Strahota, Meli, Muraski, Raemisch, Bett, Westfield and Anderson failed to respond to his complaints about defendants Beasley and Tanner;

    f. Defendants Gempler, Muraski, Medema, Meli and Strahota wrote or approved conduct reports issued on October 7, November 8 and November 13, 2007.

    g. Defendants conspired to violate plaintiff's constitutional rights.

2. Defendants John and Jane Doe Employees of WCI, Wisconsin Department of Corrections, Wisconsin Division of Adult Institutions and Captain Bruce Muraski are DISMISSED from this action,

3. Plaintiff may have until April 29, 2008, in which to identify for the court the separately numbered lawsuit identified in the body of this opinion on which he wishes to proceed under the number assigned to this case. As to this one lawsuit, plaintiff's filing fee payment will be applied.

4. Plaintiff may have until April 29, 2008, in which to advise the court which of the remaining separately numbered lawsuits he will prosecute, if any, and which he will withdraw voluntarily.

5. For any lawsuit that plaintiff dismisses voluntarily, he will not owe a filing fee.

6. For any lawsuit that plaintiff advises the court he intends to prosecute, (other than the one plaintiff chooses to keep assigned to this case number) plaintiff will owe a separate $350 filing fee, which he must pay in full no later than May 6, 2008. The payment(s) may be submitted by a check or money order made payable to the clerk of court.

7. If, by April 29, 2008, plaintiff fails to respond to this order, I will enter an order dismissing the lawsuit as it presently exists with prejudice for plaintiff's failure to prosecute.

Entered this 16th day of April, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge